IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER CROFTCHECK,** | : | CIVIL ACTION NO. 1:11-CV-1220 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **ACCOUNTS RECOVERY BUREAU, INC.,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

In this case, plaintiff Jennifer Croftcheck alleges that defendant Accounts Recovery Bureau, Inc. (ARB), a debt-collection agency, sent her a letter on June 3, 2011, that violated several provisions of the the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 to 1692p. (See generally Docs. 1, 1-2.) Before the court is ARB's motion for summary judgment (Doc. 20), wherein ARB seeks judgment in its favor on all claims. For the reasons that follow, the court will grant ARB's motion.

**I.   Background**

The facts of this case are undisputed.[1] On January 3, 2011, Pinnacle Health Hospitals referred Croftcheck's account with them to ARB for collection. (Doc. 21,

---

[1] Croftcheck has not controverted any part of ARB's statement of facts. See Doc. 21, at 1 ¶¶ 1–2 (setting forth what is evidently intended to be Croftcheck's counterstatement of facts). As a result, ARB's version of the facts is deemed admitted. FED. R. CIV. P. 56(e) (allowing a court to consider a fact undisputed if a party fails "to properly address another party's assertion of fact"); L.R. 56.1 ("All material facts set forth . . . by the moving party will be deemed to be admitted unless controverted by . . . the opposing party."); L.R. 7.8(a) ("If counter statements of facts . . . are not filed, the statements of the moving party will be deemed adopted.").

at 1 ¶ 1.) ARB sent Croftcheck an initial written communication that same day, which informed Croftcheck of her right to dispute the debt or seek its validation:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you [dispute this debt], this office will obtain judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Id. at 1 ¶¶ 2–3.) Croftcheck's written response three weeks later informed ARB that her letter was "notice that your claims are disputed and that validation is requested." (Id. at 2 ¶¶ 4–5.) She advised ARB that "phone calls to me are inconvenient and that your communication with me should be done in writing." (Id. at 2 ¶ 5.)

Following receipt of Croftcheck's validation request, ARB sent Pinnacle Health Hospital's itemized bill to her on February 24, 2011. (Id. at 2 ¶ 6.) ARB received no further communication from her. (Id. at 2 ¶¶ 7–8.)

Months went by without any contact between the parties. On June 3, 2011, ARB sent its final correspondence to Croftcheck, which stated:

> Our records indicate that you refuse to pay the above referenced balance.
>
> Please notify this office if you can not pay this balance. You may qualify for relief from debt. We will be happy to advise you of the eligibility requirements.

(Id. at 2 ¶¶ 10–11.) As of the time ARB sent this letter, Croftcheck had neither made payments on the account nor notified ARB that she had agreed to make any payments. (Id. at 3 ¶¶ 12–13.)

Shortly thereafter, on June 28, 2011, Croftcheck initiated this action by filing a complaint against ARB, alleging that the June 3, 2011, letter had violated at least five provisions of the FDCPA. (Doc. 1, ¶ 12.) The complaint was filed as a putative class action, but Croftcheck's motion for class certification was denied on November 29, 2011, following hearing. (Docs. 12–15 (motion and briefing); Doc. 19 (denial order).) ARB filed the instant motion for summary judgment (Doc. 20) on December 30, 2011, which is now fully briefed and ripe for disposition.

## II.  Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and as to which a party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

3

**III.   Discussion**

   **A.   General principles of the FDCPA and its interpreting case law**

Enacted in 1977, the Fair Debt Collection Practices Act, as its name implies, was passed into law with the intention of curbing the "abusive, deceptive, and unfair debt collection practices" that debt collectors commonly employed. 15 U.S.C. § 1692(a). The FDCPA is meant both to protect consumers from abusive debt-collection practices and to ensure that "those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006) (quoting 15 U.S.C. § 1692(e)).

As a remedial statute, the FDCPA is construed broadly and liberally in favor of the consumer. Id. (citing Hamilton v. United Healthcare, 310 F.3d 385, 392 (5th Cir. 1992); Stroh v. Director, Ofc. of Workers' Comp. Programs, 810 F.2d 61, 63 (3d Cir. 1997)). See Johnson v. Riddle, 305 F.3d 1107, 1117 (10th Cir. 1992) (citing, e.g., Pfennig v. Household Cred. Servs., Inc., 286 F.3d 340, 344 (6th Cir. 2002); Rossman v. Fleet Bank (R.I.) Nat'l Ass'n, 280 F.3d 384, 390 (3d Cir. 2002); Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 707 (3d Cir. 1992)) (analogizing to the Truth in Lending Act, 15 U.S.C. §§ 1601–16, in giving the FDCPA a liberal construction). From this approach to the FDCPA derives the principle that "any lendor–debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor." Brown, 464 F.3d at 454.

The least-sophisticated-debtor standard is "lower" than a standard based on a "reasonable debtor," as communications that a reasonable debtor would find neither deceptive nor misleading might yet deceive or mislead the reasonable debtor's least-sophisticated counterpart. Id. (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000)). This standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd." Wilson, 225 F.3d at 354 (quoting United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996)).

Nonetheless, the sympathetic breadth of FDCPA protection has its limits, and "bizarre or idiosyncratic interpretations of collection notices" do not give rise to cognizable claims under the FDCPA. Id. (quoting Nat'l Fin. Servs., 98 F.3d at 136). Debtors are presumed capable of at least "a basic level of understanding" and to have a "willingness to read with care." Id. The FDCPA thus provides no "solace to the willfully blind" or nonobservant; even the least sophisticated debtor "is bound to read collection notices in their entirety." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 299 (3d Cir. 2008) (citing Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir.2007); Peter v. GC Servs. L.P., 310 F.3d 344, 349 (2d Cir.2002); Schweizer v. Trans Union Corp., 136 F.3d 233, 238 (2d Cir.1998)). Refusing to entertain a debtor's "unrealistic and fanciful" reading of a collection communication recognizes the balance between protection of consumers and of honest debt collectors that the FDCPA is meant to preserve. Id. (quoting 15 U.S.C. § 1692(e)).

### B.     Disposition of Croftcheck's FDCPA claims

#### 1.     Croftcheck's claim under § 1692c(c)

As Croftcheck frames the matter, this case turns on the meaning of the verb "refuse" under the FDCPA. Croftcheck attempts to construct a logical dilemma on this foundation under which at least one of her FDCPA claims must survive. Focusing on the phrase "refuse to pay" in ARB's June 3 letter, Croftcheck contends that if ARB truthfully stated her refusal to pay, ARB violated § 1692c(c) of the FDCPA "by continuing to attempt [to collect] a debt that the consumer refuses to pay [when] the defendant is aware of the refusal to pay." (Doc. 22, at 3.) If ARB's statement were false, it violated § 1692e, which prohibits debt collectors from making false or misleading representations in connection with debt-collection efforts. However, this dilemma is false itself. Moreover, contrary to Croftcheck's characterization of the FDCPA liability issue as posing a question of fact for the jury, the question is rather one of law within the court's province to decide, as the answer requires interpretation of the statutory provisions involved.

The falsity of Croftcheck's dilemma becomes evident upon review of the language of § 1692c(c), which reads:

> If a consumer notifies a debt collector *in writing* that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt . . . .

Id. (emphasis added). As Croftcheck has admitted (Doc. 21-2, at 2 ¶ 3, 5 ¶ 3) that she never notified ARB in writing that she had refused to pay the debt that ARB was

6

attempting to collect, her § 1692c(c) claim cannot succeed regardless of the truth or untruth of ARB's June 3, 2011, letter. Section 1692c(c) simply does not apply to the facts of this case.

### 2. Croftcheck's remaining four FDCPA claims

The remainder of the FDCPA sections that Croftcheck contends that ARB violated are §§ 1692d, 1692e, 1692e(10), and 1692f, which forbid debt collectors from using debt-collection practices that involve harassment, abuse, false or misleading representations, or are otherwise unfair or unconscionable. The premise for her contention is that the phrase "refuse to pay" in ARB's June 3 letter is purportedly "both misleading and exceedingly harassing" because she did not, in fact, "refuse" to pay. (Doc. 1, ¶ 4; Doc. 22, at 1 ¶ 1.)

ARB posits that a failure to pay constitutes refusal to pay regardless of the reasons for nonpayment. According to ARB, Croftcheck's insistence that "refuse" strictly implies an affirmative indication is the kind of "bizarre and idiosyncratic interpretation" described in Brown and Wilson that, if given credence, would undermine the purpose of the FDCPA. For a reasonable interpretation of "refuse," ARB cites the Merriam-Webster Dictionary, which defines "refuse" in its transitive sense as "to express oneself as unwilling to accept" or "to show or express unwillingness to do or comply with." (Doc. 21, at 8 (citing Free Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/refuse).) According to ARB, Croftcheck's "conduct in not making any payments on the obligation after she

7

incurred it and after receiving ARB's letters . . . indicated her unwillingness to pay it." (Id.)

Croftcheck responds that there is an "extraordinary difference" between failure to pay and refusal to pay:

> [G]enerally people do not refuse to pay debts; it is a matter of ability. A consumer who does not have the ability to pay a debt does not refuse to pay; they simply cannot. Under this circumstance the Defendant would simply accuse the consumer as refusing.

(Doc. 22, at 4.)

The court, unpersuaded by either party's position on how the meaning of "refuse" under the FDCPA should be determined, must undertake its own inquiry, guided by long-standing canons of statutory construction.[2]

As in any dispute involving the meaning of a term within a statutory scheme, the primary source of guidance is the statute itself. Burgess v. United States, 553 U.S. 124, 129–30 (2008) (citing Stenberg v. Carhart, 520 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition . . . .")) See also Caminetti v. United States, 242 U.S. 470, 486 (1917) ("[F]ull effect must be given to the intention of [the legislature] as gathered from the words of the statute." (quoting United States v. Bitty, 208 U.S. 393, 401 (1908))). Section 1692a of the

---

[2] The only use of the word "refuse" in the text of the FDCPA that is relevant to the instant case appears in § 1693c(c), so interpretation of the word in the context of determining whether its use violates the other provisions of the Act is not, strictly speaking, an exercise in statutory construction. Nonetheless, the requisite analysis is analogous to construing a statutory term, and interpretive canons thus provide a useful framework for answering the questions at hand.

FDCPA is devoted to defining terms used throughout the statute; however, "refuse" is not among the defined terms.[3]

Absent a specific definition for a statutory term within the statute itself, the inquiry invariably turns to the plain meaning of the term at issue. Caminetti, 242 U.S. at 485–86 ("Statutory words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them.") Accord Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 296–97 (2006) (quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000); Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992)). Dictionaries provide an excellent source for discerning the plain meaning of words, and to the extent that ARB referred to a dictionary in support of its interpretation of "refuse," ARB was well counseled to do so. However, ARB relied on the transitive definition of "refuse," which was incorrect. Transitive verbs take nouns as direct objects (e.g., *to hit a baseball* or *to eat a sandwich*), but in the phrase "refuse to pay," the verb "refuse" is being used in its intransitive sense.[4]

---

[3] Nor is there any definition or discussion of the meaning of the word "refuse" in the FTC Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097–02 (Dec. 13, 1988). See also Proposed Official Staff Commentary on Fair Debt Collection Practices Act, 51 Fed. Reg. 8019–29) (Mar. 7, 1986) (also containing no discussion of "refuse").

[4] Of course, "refuse" can be used transitively (e.g., *refuse an invitation* or *refuse him admission to the theater*), but in the phrase "refuse to pay *a debt*," it is "pay" that is transitive because "pay" takes a direct object. "Refuse a debt" is an ungrammatical and senseless construction.

Consequently, the proper focus is on the definition of "refuse" as an intransitive verb. The Free Merriam-Webster Dictionary defines "refuse" intransitively as "to withhold acceptance, compliance, or permission."[5] The Cambridge Dictionary of American English offers "to say or show that you are not willing to do, accept, or allow something."[6] The Oxford English Dictionary gives a nearly identical definition: "indicate or show that one is not willing to do something."[7] All three dictionaries are consistent in their definitions of "refuse" in its intransitive sense; under all three definitions, to "refuse" to do something does not require an affirmative statement or communication of unwillingness. Withholding compliance constitutes refusal, as does saying, showing, or indicating unwillingness.

Based on the plain meaning of "refuse," ARB's reference to Croftcheck's failure to pay as a refusal to pay was accurate, regardless of whether her nonpayment was the result of deliberate noncompliance or of a lack of ability, because the undisputed facts establish that she neither made any payments on her account nor communicated anything to ARB to explain her failure to pay a debt she knew she was obligated to pay. Indeed, if Croftcheck had provided ARB with some

---

[5] Free Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/refuse.

[6] Cambridge Dictionaries Online, American English Dictionary, http://dictionary.cambridge.org/dictionary/american-english/refuse_1?q=refuse.

[7] Oxford Dictionaries Pro, http://english.oxforddictionaries.com/definition/refuse?region=us&rskey=NkqupA&result=1.

explanation, such as that she was willing to pay but lacked the wherewithal, before ARB sent its June 3 letter to her, that might have altered the scenario materially, but that case is not before the court. The undisputed facts of record show that Croftcheck responded to ARB's validation letter of February 24, 2011, with both utter silence and total nonpayment, a combination that made it entirely reasonable for ARB to conclude three months later that Croftcheck was refusing to pay.

That ARB's June 3 letter accurately characterized Croftcheck's nonpayment as a refusal to pay leads inexorably to the conclusion that, by sending this letter, ARB did not violate the FCRPA in any way. ARB's use of the phrase "refuse to pay" was not harassing or abusive under 15 U.S.C. § 1692d; it was not false or misleading under § 1692e or e(10); and it was not otherwise unfair or unconscionable under § 1692f. Judgment in favor of ARB on all claims in therefore appropriate.

    **C.**    <u>**Alternative grounds for granting ARB's motion**</u>

An entirely distinct line of reasoning also resolves in the conclusion that ARB is entitled to judgment in its favor on all claims. Croftcheck's case against ARB focuses on three words in ARB's June 3 letter and ignores not just the rest of the sentence but also the rest of the letter. Such a narrow focus neglects the duty of even the least sophisticated debtor "to read collection notices in their entirety." <u>Campuzano-Burgos v. Midland Credit Mgmt., Inc.</u>, 550 F.3d 294, 299 (3d Cir. 2008) (citing <u>Fed. Home Loan Mortg. Corp. v. Lamar</u>, 503 F.3d 504, 510 (6th Cir.2007); <u>Peter v. GC Servs. L.P.</u>, 310 F.3d 344, 349 (2d Cir.2002); <u>Schweizer v. Trans Union Corp.</u>, 136 F.3d 233, 238 (2d Cir.1998)). The three much-discussed words take on a

different light when viewed in the context of the full sentence containing them: "*Our records indicate* that you refuse to pay the above referenced balance." (Doc. 21-1, at 8 (emphasis added).) This sentence, the first in ARB's letter, made no accusation against Croftcheck. It did not claim that Croftcheck had, in fact, refused to pay her debt; it merely communicated—truthfully—what ARB's records reflected. Such a communication is not harrassing, abusive, false, unfair, or in any other way violative of the FDCPA.

Moreover, even if the least sophisticated debtor might read that opening sentence as accusatory, the remainder of the June 3 letter evinces an unmistakable intent not to harass or abuse but to offer help, if help were needed: "Please notify this office if you can not pay this balance. You may qualify for relief from this debt. We will be happy to advise you of the eligibility requirements." (Doc. 21-1, at 8.) Rather than being "misleading and exceedingly harassing" (Doc. 1, ¶ 4), the letter, when read as a whole, is polite and conciliatory. Condemning such a letter as a whole—solely because it includes a phrase that, taken out of context, could be viewed as objectionable— and holding that it violates the FDCPA would run counter to the purpose of the statute, which is meant to protect honest debt collectors from competitive disadvantage just as much as it is meant to protect consumers from abusive debt-collection practices. All of Croftcheck's claims against ARB under the FDCPA must, as a matter of law, fail.

**IV.**     **Conclusion**

For the foregoing reasons, the court will GRANT Account Recovery Bureau, Inc.'s motions for summary judgment (Doc. 20). An appropriate order will issue.

                                               S/ Christopher C. Conner
                                               CHRISTOPHER C. CONNER
                                               United States District Judge

Dated:     April 20, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER CROFTCHECK,** | : | **CIVIL ACTION NO. 1:11-CV-1220** |
| **Plaintiff** | : | **(Judge Conner)** |
| v. | : | |
| **ACCOUNTS RECOVERY BUREAU, INC.,** | : | |
| **Defendant** | : | |

## **ORDER**

AND NOW, this 20th day of April, 2012, upon consideration of the motion for summary judgment (Doc. 20) filed by defendant Accounts Recovery Bureau, Inc., and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion for summary judgment (Doc. 20) is GRANTED.

2. The Clerk of Court is directed to enter JUDGMENT in favor of Accounts Recovery Bureau, Inc., on all counts.

3. The Clerk of Court is directed to CLOSE the case.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge